IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:17-cv-00259-BO

VOIT TECHNOLOGIES, LLC,    )
    )
    Plaintiff,    )
    )
vs.    )
    )
DEL-TON, INC.,    )
    )
    Defendant.    )

**<u>PLAINTIFF VOIT TECHNOLOGIES, LLC'S MEMORANDUM IN OPPOSITION TO
DEFENDANT DEL-TON, INC.'S  MOTION FOR ATTORNEYS' FEES [DE 48]</u>**

1

## Table of Contents

I.    NATURE OF THE CASE ..................................................................................................... 3

II.    STATEMENT OF FACTS ................................................................................................... 5

    A.    **Patent Eligibility Under § 101 And *Alice* Remains An Unusually Complex, Evolving, And Unsettled Area Of Law, Without Any Binding Precedent Directly On Point** ...................................... 5

    B.    **VOIT Technologies, LLC, Barry Schwab, And The '412 Patent** ................................. 8

    C.    **VOIT Engaged In Appropriate And Good-Faith Litigation To Recover Damages Equal To A Reasonable Royalty From Businesses, Including Del-Ton, That It Reasonably Believed Had Infringed The '412 Patent** ...................................... 10

        i.    **VOIT Brought Its Claims Of Infringement In Good-Faith, Reasonably Believing That The '412 Patent Claimed Patentable Subject Matter** ...................................... 10

        ii.    **VOIT Successfully Tested The Merits Of Its Case, And No Court Had Found The '412 Patent Invalid Or VOIT's Claims Meritless** ...................................... 12

        iii.    **VOIT Pursued Litigation on the Good-Faith Belief that Del-Ton and the Defendants in Related Actions had Infringed the '412 Patent** ...................................... 13

        iv.    **VOIT Pursued Litigation in an Attempt to Recover a Reasonable Royalty from Del-Ton and the Defendants in Related Actions** ...................................... 13

    D.    **VOIT's actions in the case were justified and reasonable; Instead, it is Del-Ton that litigated this case in an unreasonable manner** ...................................... 14

III.    ARGUMENT ...................................................................................................................... 16

    A.    **Legal Standard** .......................................................................................................... 16

        i.    **35 USC § 285** ...................................................................................................... 16

        ii.    **Fed.R.Civ.P. 54(d)(2)(A) and Local Civil Rule 54.1** ................................... 18

    B.    **This Case is Not "Exceptional" Under 35 U.S.C. § 285** .......................................... 18

        i.    **Plaintiff's Litigation Position was Supported by the Facts and Law** ................ 18

        ii.    **Plaintiff Litigated this Case in a Reasonable Manner** .......................................... 22

    C.    **Del-Ton's Requested Attorneys' Fees are Excessive** ................................................ 27

    D.    **Del-Ton's Request Is Non-Compliant With The Local Civil Rules, And Del-Ton Seeks Payment Of Non-Taxable Expenses** ...................................... 28

IV.    CONCLUSION ................................................................................................................. 29

Pursuant to Local Civil Rules 7.1 and 7.2, Plaintiff VOIT Technologies, LLC ("VOIT" or "Plaintiff"), files this responsive Memorandum in Opposition to Defendant Del-Ton, Inc.'s ("Del-Ton" or "Defendant") Motion to For Attorneys' Fees (DE 48) ("Motion").

## I.    NATURE OF THE CASE

VOIT sued Del-Ton for infringement of U.S. Pat. No. 6,226,412 ("'412 Patent"). (DE 1).  Del-Ton subsequently filed its answers, counterclaims (including a request for attorneys' fees), a motion for bond, and a motion to dismiss. (DE 12 through DE 16).  Following a hearing, this Court granted Del-Ton's motion to dismiss, and invalidated the '412 Patent under 35 U.S.C. § 101 and the *Alice/Mayo* framework; the Court dismissed all other pending motions as moot.[1] (DE 46).  Thereafter, Del-Ton filed the Motion (DE 48) urging the Court to declare VOIT's case "exceptional" under 35 U.S.C. § 285 and award Del-Ton fees and costs.

Under § 285, a court may "award fees in the ***rare*** case in which a party's unreasonable conduct— while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane Fitness, LLC v. ICON Health & Fitness*, 134 S. Ct. 1749, 1757, 188 L. Ed. 2d 816 (2014) (emphasis added) (citing § 285).  A losing case is rarely an "exceptional case."  Instead, an "exceptional" case is one which, when "considering the totality of the circumstances," "stands out from others with respect to (1) the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or (2) the unreasonable manner in which the case was litigated." *Id*., at 1756.  The party seeking fees must prove, by a preponderance of the evidence, that a case is exceptional. *Id.*, at 1758.

The facts and totality of circumstances in this case make clear that  Del-Ton has failed to prove that this case is one of those 'rare,' 'exceptional' cases justifying a fee award under § 285.  Indeed, although this Court found the '412 Patent to be ineligible under § 101 and the *Alice/Mayo* test, VOIT reasonably argued that the asserted claims were not directed to an abstract idea, and even if so, that an

---

[1]    VOIT has filed a notice of appeal (DE 52), and respectfully reserves the right to amend this memorandum based on the outcomes of its motion to strike and appeal.

inventive concept existed. This is especially true given that patent eligibility under § 101/*Alice* remains an unusually complex, evolving, and unsettled area of law, particularly as it applies to computer based inventions, such as the one at issue in this case. Given the evolving state of the law, a § 101 analysis is a difficult exercise, and therefore, not an exercise that lends itself to a fee award under § 285. Indeed, courts are reluctant to award fees under § 285 upon finding a patent invalid under § 101/*Alice*. Also, the '412 Patent's prosecution history, including the Supervisor's Memo (defined and discussed in more detail below), did not put VOIT on notice of any potential § 101 issues. The '412 Patent was never rejected under § 101, and the Supervisor's Memo did not bring up any § 101 concerns.

Further, VOIT litigated this case in a reasonable and expedient manner. VOIT was entitled to vigorously enforce its presumptively valid patent against infringers in an attempt to recover its damages. VOIT was willing to test the merits of its case on numerous occasions, and presented only supportable arguments when the merits of its case were challenged. Significantly, VOIT successfully defeated two motions to dismiss in related actions. VOIT's filings in this case were justified and reasonable, being either granted upon a showing of good cause (i.e. motions for extension), denied as moot (i.e. motion to dismiss and motion to strike counterclaims), or denied without explanation (i.e. motion to continue deadlines related to Del-Ton's motion for bond).

On the contrary, it is Del-Ton that litigated this case in an unreasonable manner. For example, Del-Ton uses confidential settlement communications between the parties' attorneys to support its claim for attorneys' fees in violation of Fed. R. Evid. 408.[2] This is highly improper and references to said

---

[2]    VOIT requests that this Court disregard the portions of Del-Ton's Motion referring to the parties' settlement discussions for violating Fed. R. Evid. 408, which renders the parties' settlement communications inadmissible to prove the validity of Del-Ton's claim for attorneys' fees. *See, e.g., HR US LLC v. Mizco Int'l, Inc.*, 2010 U.S. Dist. LEXIS 103123, at *31-33 (E.D.N.Y. 2010) (holding settlement offers inadmissible to support a claim for attorneys' fees under Rule 408, and denying motion for attorneys' fees under § 285). Regardless, VOIT addresses those portions it seeks to strike should the Court deny VOIT's motion to strike. *Parallel Iron LLC v. NetApp, Inc.*, 84 F. Supp. 3d 352, 359-60 (D. Del. 2015) ("Defendant did not offer settlement evidence to support its request for attorney's fees. The Court therefore finds that Defendant did not violate Rule 408 and denies Plaintiff's request that the Court sanction Defendant."); *see also Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) (stating that, under *Octane*, consideration of litigation conduct "includ[es] the

4

communications should be disregarded in total. Additionally, Del-Ton filed meritless non-infringement arguments that had been rejected by other courts.

Del-Ton's claim for attorneys' fees and costs also fails because: (a) Del-Ton's claim violates this Court's Local Rules; and (b) Del-Ton's request for fees is unreasonable in that it seeks compensation for unnecessary and duplicative work, such as the Motion for Bond (DE 15), as well as for work that should have been delegated to associate attorneys, rather than partners with higher hourly rates. For the reasons set forth above and as further explained below, Del-Ton has failed to prove that this case is exceptional under § 285 and Del-Ton's Motion should be denied.

## II. STATEMENT OF FACTS

### A. Patent Eligibility Under § 101 And *Alice* Remains An Unusually Complex, Evolving, And Unsettled Area Of Law, Without Any Binding Precedent Directly On Point

Del-Ton would have the Court believe that the '412 Patent's invalidity under § 101/*Alice* was a predestined outcome given the current state of the law, and that no reasonable patentee would pursue its enforcement. (DE 49 at 13). Del-Ton is wrong. Patent eligibility under § 101 remains an unusually complex, evolving, and unsettled area of the law, with recent precedential Federal Circuit rulings being issued on a regular basis. *See, e.g.*, *EON Corp. IP Holdings, LLC v. FLO TV Inc.*, No. 10-cv-812-RGA, 2014 WL 2196418, at *2 (D. Del. May 27, 2014) (denying attorney fees, noting patentee's position "turned on a complex and evolving area of [§ 101] law" and "the [court's] decision was not an easy one"); *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 2015 U.S. Dist. LEXIS 22039, 2015 WL 774655, at *2 (N.D. Ill. Feb. 24, 2015) (noting that "section 101 jurisprudence is a recently evolving and unsettled area of law as it applies particularly to software patents").

Indeed, "determining whether a patent drawn to an otherwise ineligible abstract idea adds an 'inventive concept' to that idea has undergone considerable scrutiny in recent years." *GoDaddy.com LLC v. RPost Communs. Ltd.*, 2016 U.S. Dist. LEXIS 118197, *19-21 (D. Ariz. August 31, 2016); *see also*

---

conduct of the movant"); *NXP B.V. v. BlackBerry, Ltd.*, 58 F. Supp. 3d 1313, 1325 (M.D. Fla. 2014) (denying attorney fees, noting that "[a]ny delay, expense or inconvenience that resulted [wa]s a shared responsibility of the parties").

*Synopsys, Inc. v. Mentor Graphics Corp.*, 2015 U.S. Dist. LEXIS 92769, 2015 WL 4365494, *4 (N.D. Cal. July 16, 2015) (noting that "when a patent claiming an otherwise ineligible abstract idea or mental process includes in addition what has been characterized as an 'inventive concept'" is a "developing area of the law" (citations omitted)); *Gametek v. Zynga, Inc.*, 2014 U.S. Dist. LEXIS 122834, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) (denying attorney fees, noting invalidity finding does not make case ipso facto exceptional, "particularly . . . where the critical issue of inventive concept is evolving" after *Alice*).

To be sure, just between the cut-off date for briefing on Del-Ton's Motion to Dismiss and oral argument in this case, the Federal Circuit issued at least two decisions analyzing "inventive concepts" in software patents. *See* Notice of Suggestion of Subsequently Controlling Subsequently Authority (DE 42).

Significantly, in only the few weeks following the dismissal of this case the Federal Circuit issued **_no less than four precedential decisions_** upholding the eligibility of software patents under § 101/*Alice*. *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018) (holding that claims directed to software for providing a particular arrangement of menu options for mobile devices are patent-eligible); *Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299 (Fed. Cir. 2018) (finding broad claims directed to computer virus screening software patent eligible); *Berkheimer v. HP, Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) (vacating and remanding judgment that software patent claims directed to archiving digital assets were patent ineligible); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2018 U.S. App. LEXIS 3463 (Fed. Cir. Feb. 14, 2018) (vacating and remanding judgment that software patent claims directed to creating and filing forms were patent ineligible).[3]

---

[3]     Numerous district courts have also issued decisions addressing § 101 eligibility since the hearing on Del-Ton's motion to dismiss. *See, e.g,. P&G v. QuantifiCare Inc., No.* 17-CV-03061-LHK, 2017 U.S. Dist. LEXIS 209448 (N.D. Cal. Dec. 19, 2017) (certain computer-implemented claims directed to "skin imaging and analysis systems and methods" survived *Alice* challenge); *Confident Technologies, Inc. v. AXS Group LLC*, No. 3-17-cv-02181, 2018 U.S. Dist. LEXIS 10949 (S.D. Cal. Jan. 23, 2018) (claims directed to "generating a completely automated test to tell computers and humans apart" survived a motion to dismiss under § 101); *IBM v. Groupon, Inc.*, C.A. No. 16-122-LPS-CJB, 2017 U.S. Dist. LEXIS 190442 (D. Del. Nov. 17, 2017) (claims directed to "presenting interactive applications," such as advertising, "on a computer network" with multiple "user reception systems" survive Rule 12(c)

6

This flurry of recent precedential decisions by the Federal Circuit shows that the § 101 eligibility analysis remains an evolving, complex, and unsettled area of the law that is "in a somewhat confused state." Dennis Crouch, *Eligibility: A Factual Dispute Requires Alleged Facts*, Patently-O Patent Blog (February 22, 2018), https://patentlyo.com/patent/2018/02/eligibility-handling-disputed.html, attached hereto as Exhibit A.

Another telling piece of evidence comes in the form of Del-Ton's Motion itself, which includes a declaration by attorney Robert Joseph Morris (DE 49-7) stating:

> "Patent infringement cases are inherently complex. […] The law in the area of patent infringement ***has been changing rapidly and significantly over the last several years*** and attorneys practicing in this area must invest a great deal of time and effort to stay current in the law. Finally, attorneys in patent infringement matters are often required to grasp complex technical concepts and then apply this nuanced and ***rapidly changing law*** to highly technical issues."

(DE 49-7 at 5 (emphasis added)).

Del-Ton also alleges that the '412 Patent's claims are so similar to those found ineligible in *TLI*, *Intellectual Ventures*, and *Ultramerical*, that VOIT knew or should have known its arguments were meritless. (DE 49 at 10-12). However, in its opinion, this Court did not find the '412 Patent's claims to be similar, much less nearly identical, to any claims previously invalidated, and there were no governing precedents to guide VOIT that found nearly identical claims invalid.

As explained in VOIT's memorandum in opposition to Del-Ton's motion to dismiss, unlike the '412 Patent, the claims at issue in these cases were different. For example, the claims in *Ultramerical* did not recite a single computer component, nor did it recite any computer-centric steps; instead, they focused on the exchanges of abstract elements, such as "messages," "payments," and "queries" by and between abstract elements such as a "consumer," "sponsor," "facilitator," and the like. *See Ultramerical* at 713. And, unlike the claims in *TLI*, claim 1 of the '412 Patent recites numerous additional specific non-conventional and non-generic computer-centric steps as highlighted in VOIT's memorandum in

---

challenge under § 101); *WordLogic Corporation v. Fleksy, Inc.*, Case No. 16 CV 11714, 2017 U.S. Dist. LEXIS 184534 (N.D. Ill. Nov. 7, 2017) (claims directed to narrowing a search list presented to a user entering data in a mobile device survived Rule 12(b)(6) challenge under § 101).

7

opposition to Del-Ton's motion to dismiss. Further, *Intellectual Ventures*, the compression step being referred to was merely "compressing the data" and "decompressing the data," and the claimed method did not include any of the additional specific and unconventional computer centric method steps identified by VOIT.

Accordingly, none of the claims in the cases cited by Del-Ton were similar, much less identical, to the '412 Patent's claims. Indeed, there were no governing precedents to guide VOIT that found nearly identical claims invalid.

Given this lack of precedent and the rapidly changing law surrounding patent eligibility under § 101/*Alice*, it would not have been prudent for VOIT to assume that the '412 Patent was invalid under § 101.

### B. VOIT Technologies, LLC, Barry Schwab, And The '412 Patent

Barry Schwab, the majority owner of VOIT, is a serial inventor whose technological innovations have resulted in some forty (40) U.S. patents, including the '412 Patent and several directly related patents – U.S. Patent No. 7,418,474; U.S. Patent No. 5,973,731; U.S. Patent No. 6,353,699; U.S. Patent No. 7,702,755; and U.S. Patent No. 7,970,655 (collectively, the "Related Patents"). When "the internet and the web was in its infancy if not … nativity,"[4] (Transcript of Motion to Dismiss Hearing on Nov. 16, 2017 ("Hearing") 21:22-23, attached hereto as Exhibit P), Mr. Schwab invented the subject of the '412 Patent, which provided a computer-centric solution to a computer-centric problem that did not exist before the age of the internet. He devoted several years passionately developing the invention. (DE 1 ¶ 4).

At the time, the methods for communicating text with images that were stored in a relational database presented several problems, including: poor quality of image renderings, slow communication

---

[4]    The '412 Patent claims a priority date of March 24, 1995 (*See* DE 1-1 at 1), merely five (5) years after "[t]he online world … took on a more recognizable form in 1990, when computer scientist Tim Berners-Lee invented the World Wide Web." Evan Andrews, *Who invented the internet?* History / A&E Television Networks, LLC (Dec. 18, 2013), http://www.history.com/news/ask-history/who-invented-the-internet, attached hereto as Exhibit B.

response times, a high level of unnecessary server activity, and slow speeds associated with database updating. Mr. Schwab's invention of organized combination of technical steps disclosed in the '412 Patent significantly improved all of these technical problems.

On May 1, 2001, the USPTO issued the '412 Patent, which claims a priority date of March 24, 1995, to Mr. Schwab. (*See* DE 1-1 at 1). Indeed, the '412 Patent's priority date precedes the founding of eBay in September of 1995 (as AuctionWeb) and the launch of Amazon's online store in 1995. *Compare* (DE 1-1 at 1), *with* eBay, *Our History*, http://www.ebayinc.com/our-company/our-history (last visited Mar. 8, 2018), attached hereto as Exhibit C, *and* Ann Byers, *Jeff Bezos: the founder of Amazon.com* 46-47 (2006). In granting the '412 Patent, the Federal Government exchanged 17 years of exclusive use for the public dissemination of the information contained therein, which stimulates ideas and the development of further significant advances in the art. *See Kewanee v. Bicron*, 416 U.S. 470, 481 (1974); *see also* J. Jonas Anderson, *Secret Inventions* 26 Berkeley Tech. L.J. 917, 928-31 (2011).

Mr. Schwab "attempted to commercialize the subject of the '412 Patent, unfortunately without success." (DE 1 ¶ 4). Del-Ton's allegations that "VOIT does not practice the technology covered by the '412 Patent" (DE 49 at 5) and unfair portrayal of VOIT as "a non-practicing entity ("NPE") that does not make or sell products" (*id.* at 4) ignores the history of Mr. Schwab's commercialization efforts and temporary loss of patent rights through fraud.

Beginning in 1996, Mr. Schwab and his business associate, Ronald Thomas, formed several entities including TS Holdings, Inc., TeleScan Technologies, LLC, TruckScan, LLC to commercialize the '412 Patent and Related Patents with product offerings under the names TruckScan, TrailerScan, and HeavyScan. *See* Affidavit of Barry Schwab [DE 50-4], *TS Holdings, Inc. v. Schwab*, 4:09-cv-13632-MAG-MKM (E.D. Mich. Mar. 14, 2011), attached hereto as Exhibit D. While these products were launched with moderate success, the businesses unfortunately failed. *See id.* Indeed, for reasons beyond his control, Mr. Schwab lost ownership of the '412 and Related Patents for many years, until regaining ownership by court order on March 14, 2012. *See id;* Order [DE 95], *Schwab v. Thomas*, 4:09-cv-13632-

MAG-MKM (E.D. Mich. Mar. 14, 2012), attached hereto as Exhibit E; Mar. 28, 2012 Affidavit of Barry Schwab, attached hereto as Exhibit F.

Only more recently did Mr. Schwab form VOIT to commercialize his invention after realizing that newer e-commerce technologies, such as Del-Ton's online store, infringed the '412 Patent. See Complaint, DE 1 at 2.

    **C.    VOIT Engaged In Appropriate And Good-Faith Litigation To Recover Damages Equal To A Reasonable Royalty From Businesses, Including Del-Ton, That It Reasonably Believed Had Infringed The '412 Patent**

        **i.    VOIT Brought Its Claims Of Infringement In Good-Faith, Reasonably Believing That The '412 Patent Claimed Patentable Subject Matter**

VOIT brought this litigation against Del-Ton and all related actions in good-faith with a reasonable expectation of success on the merits. Until this Courts January 11, 2018 Order [DE 46] and Judgment [DE 47], the '412 Patent enjoyed the presumption of validity afforded to all patents issued by the USPTO. *See* 35 U.S.C. § 282; *see also Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1570 (Fed. Cir. 1987) ("The presumption mandated by § 282 is applicable to all of the many bases for challenging a patent's validity."); 6A-19 Chisum on Patents § 19.02 ("A patent is presumed to be valid and in compliance with the requirements of patentability once it is issued by the Patent and Trademark Office.").

Contrary to Del-Ton's allegations, the ambiguous note in the '412 Patent's prosecution file from the supervising examiner to the primary examiner (the "Supervisor's Memo") (DE 12-3) did not put VOIT on notice of any potential § 101 issues. There are numerous reasons why it did not and could not impart VOIT with knowledge that the '412 Patent failed to claim patentable subject matter.

First, the claims the Supervisor's Memo refers to were amended prior to issuance, thus differ from those in the '412 Patent. Second, the Supervisor's Memo did not refer to § 101 issues. Instead, it referred to § 103 obviousness and § 112 indefiniteness concerns, and the supervisor admitted he was not knowledgeable on the subject and was unsure of his concerns:

> "Part of the invention ***appears*** to correspond to what is done on online shopping, like ***ebay***, or ***Amazon***,[5] etc. ***While I don't know the particulars of how these sites create their particular databases***, it would seem quite ***obvious*** to store the text information and image information separately in different formats. […] The indicated features in your reasons for allowance ***don't seem nonobvious***. Having first and second sets of unique records identifying textual and image data, ***should be found in the patent literature somewhere***, ***one would think***."

DE 12-3 (emphasis added). However, the invention was not "found in the patent literature," and the '412 Patent was eventually allowed.

Third, it was highly unlikely that the supervisor was referring to § 101 patent eligibility issues because the standard for patent eligibility had been significantly broadened two years prior in *State Street Bank v. Signature Financial Group*, 149 F.3d 1368 (Fed. Cir. 1998), and even pure business method claims not tied to machines or computers were considered patentable under § 101 at that time, *id.*, at 1375 (establishing the principle that a claimed invention was patentable under § 101 so long as it involved some practical application and "produces a useful, concrete and tangible result."). To the extent that the Supervisor's Memo does refer to § 101 patent eligibility, such can fairly be interpreted as the examiner being aware of the patentability issues that would later be addressed in *Alice*, and finding the '412 Patent, as it was or with later amendments, to be patentable.

Moreover, the falsity of Del-Ton's assertion that "[i]t appears as if the primary examiner did not directly address the supervising examiner's concerns" (DE 49 at 8) is clearly apparent because the primary examiner copied a portion of the Supervisor's Memo verbatim in his next office action. *See* Office Action dated June 29, 2000, at 2; attached hereto as a part of the File History Excerpts, Composite Exhibit G. Despite having received the Supervisor's Memo, and addressing his supervisor's concerns, the primary examiner nevertheless identified allowable subject matter. *Id.*, at 3. Following an amendment by the applicant, the USPTO issued a notice of allowability on November 8, 2000, a notice of allowance on November 14, 2000, and a subsequent modification thereto later in the same month. *See* Notice of Allowability dated November 8, 2000, Notice of Allowance dated November 14, 2000, and Attachment to

---

[5] The supervisor did not appear to realize that the '412 Patent's priority date of March 1995 pre-dated eBay and Amazon.com, as discussed above.

and Modification of Notice of Allowability, dated November, 2000, attached hereto as a part of Composite Exhibit G. The '412 Patent did not issue until May 1, 2001. (*See* DE 1-1 at 1). The USPTO issued at least ***three*** office actions and communications after the Supervisor's Memo, and had at least ***ten*** months to withdraw its notice of allowance if it believed there to be any issues with the '412 Patent.

The foregoing facts make clear that Del-Ton is wrong - the Supervisor's Memo did not identify § 101 eligibility issues, or otherwise impart VOIT with knowledge that '412 Patent failed to claim patentable subject matter. Indeed, VOIT reasonably interpreted these facts regarding the Supervisor's Memo as supporting the '412 Patent validity under § 101.

### ii. VOIT Successfully Tested The Merits Of Its Case, And No Court Had Found The '412 Patent Invalid Or VOIT's Claims Meritless

Del-Ton correctly identifies [ENTER AMOUNT] other cases in which VOIT has enforced the '412 Patent based on the same or similar claim of infringement. In each and every one of those lawsuits, VOIT's complaint and attached materials contained the same information set forth in its complaint in this case. Multiple defendants in those cases moved to dismiss VOIT's claims, unsuccessfully.

Despite being challenged, no court or government agency had found the '412 Patent invalid, or VOIT's claims meritless. Indeed, in substantially similar cases, *VOIT Technologies, LLC v. Drucker Labs, L.P.*, 4:16-CV-00695-ALM (E.D. Tex. Filed Sept. 9, 2016), and *VOIT Technologies, LLC v. Bluegate, Inc.*, No. 17-22472 (S.D. Fla.), VOIT's arguments were found to have merit, and VOIT successfully defeated motions to dismiss, which contained virtually identical non-infringement arguments presented by Del-Ton in its motion for bond. *See* Memorandum Opinion and Order denying Drucker Lab's Motion to Dismiss, attached hereto as Exhibit H.

While multiple defendants challenged VOIT's claims in motions to dismiss, none did so on § 101/*Alice* grounds up until Del-Ton. Accordingly, the '412 Patent's eventual susceptibility to a § 101/*Alice* challenge was not as "obvious" as Del-Ton would have the Court believe (DE 49 at 14).

Only after Del-Ton challenged the '412 Patent under § 101 did other defendants follow suit. And, VOIT was willing to test the merits of its arguments in those cases as well by preparing and filing

12

responsive briefs. However, to VOIT's surprise, its arguments lost in this case. And, as a reasonable and prudent patent plaintiff should do, VOIT immediately dismissed all other pending cases following this Court's ruling.

Although this Court ultimately found the '412 Patent to be invalid under § 101, VOIT had successfully tested the merits of its case and enforced the '412 Patent through litigation up to that point.

### iii. VOIT Pursued Litigation on the Good-Faith Belief that Del-Ton and the Defendants in Related Actions had Infringed the '412 Patent

VOIT sued Del-Ton, and other business, that it reasonably believed had infringed the '412 Patent. Before filing suit against Del-Ton, or any other business, VOIT expended significant resources to review publicly available information that allowed it to complete a preliminary claim chart demonstrating infringement of each step of the '412 Patent's claims at issue. (DE 1 ¶¶ 11-12; DE 1-2; DE 1-3). VOIT had absolutely no interest in brining suit against a business that it did not believe had infringed the '412 Patent. Indeed, in the once instance where a defendant provided VOIT with evidence that it was not liable for the allegedly infringing conduct, VOIT promptly dismissed it from the case with prejudice. *Cf.* Joint Stipulation of Dismissal With Prejudice [DE 21], *VOIT Techs., LLC v. Jackson Lighting & Elec. Supply Co.*, 3:17-cv-00763-MMH-MCR (M.D. Fla. Oct. 25, 2017), attached hereto as Exhibit I.

### iv. VOIT Pursued Litigation in an Attempt to Recover a Reasonable Royalty from Del-Ton and the Defendants in Related Actions

VOIT did not merely sue Del-Ton and other defendants in related actions to extract nuisance value settlements, but rather sought to recover its damages from the infringement in the amount of a reasonable royalty. This is clearly demonstrated by the Final Consent Judgment [DE 15] entered in *VOIT Techs., LLC v. Decorative Iron of North Carolina, Inc.*, 3:17-cv-00286-FDW-DSC (W.D.N.C. Oct. 19, 2017), attached hereto as Exhibit J. In that instance, while the amount awarded to VOIT ($6,886.13) was admittedly low, it did not represent a nuisance value settlement, but was explicitly "a twenty-five percent

(25%) **_reasonable royalty_** of the gross profits [the defendant] obtained in connection with the infringing activity and VOIT's costs incurred in this litigation." [6] (*Id.* (emphasis added)).

Del-Ton's allegations that VOIT pursued a litigation campaign to extract nuisance value settlements (*see, e.g.*, DE 49 at 4) are completely baseless. Indeed, VOIT's settlements with defendants in related actions are confidential, and Del-Ton readily admits that it "has no idea" about those settlement terms or amounts. (*See* Hearing 16:12-13). Moreover, as the Court is well aware, myriad factors can influence what parties agree to settle a case for in any particular instance, including the uncertainty, time, and expense faced by all parties in litigation.

Second, Del-Ton egregiously misconstrues the fact that VOIT sought only damages and did not seek an injunction as a factor weighing in favor of exceptionality. DE 49 at 18. VOIT did not and could not seek an injunction since the '412 Patent expired on March 24, 2015, and Del-Ton has provided no evidence that VOIT knew of Del-Ton's infringement, or that of any other defendant in a related case, prior to March 24, 2015.

Further, VOIT's litigation strategy of pursuing claims of infringement against as many infringers as it could identify was reasonable in light of the fact that the '412 Patent had expired. To explain, the Patent Act provides a time limitation on damages to prevent unreasonable delays in brining suit: "no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." 35 U.S.C. § 286. Consequently, VOIT could not delay bringing actions against the 37 infringers it identified or else it would lose the right to seek damages for infringement occurring more than six years prior to the filing of a complaint.

### D. VOIT's Actions In The Case Were Justified And Reasonable; Instead, It Is Del-Ton That Litigated This Case In An Unreasonable Manner

VOIT's actions in this case were justified and reasonable, including the parties' settlement negotiations.[7] The Court's rulings evince that VOIT's motions in this case were justified and reasonable,

---

[6] It is also worth noting that Chief District Judge Whitney, Order stated that the "'412 Patent is valid and enforceable[.]" Exhibit I.

since the motions were either granted upon a showing of good cause (see Order Granting VOIT's Third Motion for Extension of Time, DE 27), denied as moot (see Order Granting Del-Ton's Motion to Dismiss, DE 42, in which VOIT's motion to dismiss and motion to strike counterclaims were denied as moot), or denied without further explanation (see order denying motion to continue deadlines related to Del-Ton's motion for bond, DE 31). Significantly, the Court did not indicate that VOIT's motions were frivolous, or failed to show good cause. On the contrary, it is Del-Ton who has litigated this case in an unreasonable manner.

First, in its Motion, Del-Ton improperly attempts to use confidential settlement communications between the parties' attorneys to support its claim for attorneys' fees in violation of Fed. R. Evid. 408. See DE 49 at 8-9; DE 49-6 at 67-61.

Second, Del-Ton's motion for bond was frivolous, wherein Del-Ton presented meritless non-infringement arguments that it knew had been previously rejected multiple times by other courts. *See* orders denying defendants' motions to dismiss on similar non-infringement grounds in *VOIT Technologies, LLC v. Drucker Labs, L.P.*, 4:16-CV-00695-ALM (E.D. Tex. Filed Sept. 9, 2016), attached hereto as Exhibit H, and *VOIT Technologies, LLC v. Bluegate, Inc.*, No. 17-22472 (S.D. Fla.), attached hereto as Exhibit K. Del-Ton's motion for bond also relied on the same arguments presented in its contemporaneously-filed motion to dismiss, namely that that the '412 Patent was invalid under § 101. Accordingly, it is highly unlikely that Del-Ton's motion for bond would have ever been granted, since if the Court granted Del-Ton's motion to dismiss, then the motion for bond would have been denied as moot (as it eventually was). And, if the motion to dismiss had been denied, then the Court would have denied Del-Ton's motion for bond, because Del-Ton's motions for bond would have primarily relied only on failing arguments (non-infringement and § 101 invalidity). Accordingly, Del-Ton knew or should have

---

[7] VOIT maintains that it is improper for Del-Ton to bring up the parties' confidential settlement communications under Fed. R. Evid. 408. Nevertheless, without admitting their relevance and propriety, VOIT will address the confidential settlement discussions cited by Del-Ton in its Motion should the Court decide to consider them.

known that its motion for bond was highly unlikely to succeed, and Del-Ton primarily filed it to thwart settlement discussions, and to collect unnecessary attorneys' fees.

Del-Ton also misrepresented to VOIT the amount of work it had completed and the amount of fees incurred in order to pressure VOIT to settle on unfavorable terms, and to allow it to continue billing for additional unnecessary work. In response to VOIT's initial reasonable settlement offer, Del-Ton's counsel sent VOIT's counsel an e-mail on July 12, 2017 stating that "Del-Ton already has prepared a counterclaim […] [and] in addition to having prepared a Motion for Bond, Del-Ton also has prepared a Motion to Dismiss. […] Del-Ton already has invested the money in having the aforementioned pleadings and motions [for bond and to dismiss] **researched and prepared**. Thus**, there is little additional cost to Del-Ton in filing these materials**." DE 49-6 at 68. Emphasis supplied. However, that was not true – Del-Ton's counsel spent at least ***49 additional hours*** researching and preparing those materials after its July 12 e-mail.[8]

## III. ARGUMENT

### A. Legal Standard

#### i. 35 USC § 285

Under § 285, a court may "award fees in the ***rare*** case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane Fitness, LLC v. ICON Health & Fitness*, 134 S. Ct. 1749, 1757, 188 L. Ed. 2d 816 (2014) (citing § 285) (emphasis supplied). A losing case is rarely an "exceptional case." Instead, an "exceptional" case is one which, when "considering the totality of the circumstances," "stands out from others with respect to (1) the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or (2) the unreasonable manner in which the case was litigated." *Id.* at 1756. "The movant must show exceptionality by preponderant evidence," *Site Update Sols., LLC v. CBS Corp.*, 639 F. App'x 634, 636 (Fed. Cir. 2016).

---

[8]    *See* billed hours after July 12 associated with preparing these materials set forth in Del-Ton's fee statements, DE 49-6 at 42-65.

In considering whether a case is "exceptional," the Court should consider "the totality of the circumstances," such as, but not limited to: "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Octane Fitness*, 134 S. Ct. at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994)). Also, "the conduct of the parties is a relevant factor under *Octane*'s totality-of-the-circumstances inquiry[.]" *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) (citing *Octane Fitness*, 134 S. Ct. at 1756). This "includ[es] the conduct of the movant." *Id.*; see also *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1415 (Fed. Cir. 2004) (finding that a district court did not abuse its discretion in denying fees under § 285 "because all of the parties had conducted themselves without the decorum required when practicing before a federal court").

Significantly, "it is the 'substantive strength of the party's litigating position' that is relevant to an exceptional case determination, not the correctness or eventual success of that position." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (quoting *OctaneFitness*, 134 S. Ct. at 1756) (emphasis in original). To wit, "[a] party's position on issues of law ultimately need not be correct for them to not 'stand out,' or be found reasonable.'" *Id.*; see also *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012)("Reasonable minds can differ as to claim construction positions and losing constructions can nevertheless be nonfrivolous.").

"The totality of the circumstances standard [announced in *Octane Fitness*] is not, however, an invitation to a 'kitchen sink' approach where the prevailing party questions each argument and action of the losing party in an effort to secure attorney's fees. In adopting the totality of the circumstances approach, the Supreme Court did not intend to burden the district court with reviewing in detail each position and each action taken in the course of litigation by the losing party... the mere fact that the losing party made a losing argument is not a relevant consideration; rather, the focus must be on arguments that were frivolous or made in bad faith. [citations omitted] To impose fees on a party simply for making

17

losing arguments would be the same in effect as fully adopting the English Rule, whereby the losing party always pays the winner's fees." *Stragent, LLC v. Intel Corp.*, 2017 WL 6756304, at *3 (E.D. Tex. Aug. 6, 2014).

### ii. Fed.R.Civ.P. 54(d)(2)(A) and Local Civil Rule 54.1

Fed.R.Civ.P. 54(d)(2)(A) provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed.R.Civ.P. 54(d)(2)(D) provides that "[b]y local rule, the court may establish special procedures to resolve fee-related issues without extensive evidentiary hearings."

Local Civil Rule 54.1(a)(1) states that "[a] prevailing party may request the clerk to tax allowable costs […] by filing a bill of costs, on AO Form 133." Local Civil Rule 54.1(c) provides that "[i]tems normally not taxed [include], without limitation: (a) witness fees, <u>subsistence, and mileage for individual parties</u> […] and multiple copies of depositions[.]" Emphasis supplied.

### B. This Case is Not "Exceptional" Under 35 U.S.C. § 285

### i. Plaintiff's Litigation Position was Supported by the Facts and Law

In dismissing VOIT's case, this Court only ruled on § 101 eligibility. However, VOIT respectfully submits that its litigation position on this issue was supported by the facts and the law, especially in light of more recent Federal Circuit decisions. Accordingly, VOIT it is appealing the dismissal. Regardless, VOIT presented supportable arguments that the asserted claims were not directed to an abstract idea, and that an inventive concept existed.

This especially true given that patent eligibility under § 101 remains an unusually complex, evolving, and unsettled area of the law, as evinced by the flurry of new precedential Federal Circuit decisions addressing § 101 eligibility issues, as well as Del-Ton's Motion and attached declaration. *See* discussion above.

"Ultimately, '[g]iven the evolving state of the law, the § 101 analysis … is a difficult exercise,' and 'therefore, not an exercise that lends itself to, e.g., shifting fees pursuant to 35 U.S.C. § 285.'" *West*

*View Research v. BMW*, No. 14-CV-2670-CAB (WVG) at 2 (S.D. Cal. Jan. 17, 2017) [CITE TO ATTACHED DOCUMENT] (citing to *Device Enhancement LLC v. Amazon.com, Inc.*, 189 F. Supp. 3d 392, 401, 2016 U.S. Dist. LEXIS 64600, *16). Numerous other courts agree.[9]

Notwithstanding the fact that this Court was operating in an evolving and unsettled area of law, "the Court found that the ['412 Patent's claims] were drawn to an abstract idea and had to determine whether the claims shoehorned an 'inventive concept' that would confer validity." *GoDaddy.com*, 2016 U.S. Dist. LEXIS 118197, at *19-20. "Ultimately, the Court held that no such inventive concept was added by the claim language." *Id.* "Nonetheless, [VOIT] reasonably argued that an inventive concept existed." *Id.* at *20. For example, VOIT argued that an inventive concept existed in the claimed "non-conventional and non-generic arrangement of method steps for managing an unconventional central relational database, using advanced digital data compression techniques to provide

---

[9]    See e.g. *O2 Media, LLC v. Narrative Sci. Inc.*, 2017 U.S. Dist. LEXIS 391 at *3 (N.D. Ill. Jan. 3, 2017) ("*Alice* did not require the plaintiff to give up any hope of enforcing patents previously granted by the Patent Office pursuant to its standard procedures."); *Garfum.com Corp. v. Reflections by Ruth*, 2016 U.S. Dist. LEXIS 174134 (D.N.J. Dec. 16, 2016) (reconsidering and overturning prior award of attorney fees; collecting cases); *Recognicorp, LLC v. Nintendo Co. Ltd.*, Case No. C12-1873RAJ (W.D. Wash. July 16, 2016); *YYZ, LLC v. Pegasystems, Inc.*, No. 13-581, 2016 U.S. Dist. LEXIS 58397, *4, 2016 WL 1761955, at *1 (D. Del. May 2, 2016) ("[T]he § 101 analysis is an evolving state of the law and a difficult exercise, which does not lend itself to, e.g., shifting fees pursuant to 35 U.S.C. § 285." See also *Papst Licensing Gmbh & Co. KG v. Xilinx Inc.*, No. 16-925, 2016 U.S. Dist. LEXIS 110306, *6-8, 2016 WL 4398376, at *2-*4 (N.D. Cal. Aug. 18, 2016) (denying attorney's fees under § 285 to the accused infringer who obtained a judgment on the pleadings that the asserted claims were invalid under § 101, noting that "[b]ecause this is a complex and developing area of the law," although Plaintiff's arguments were unpersuasive, its position was "not so baseless as to make this case exceptional"); *Device Enhancement LLC. v. Amazon.com., Inc.*, No. 15-762, 189 F. Supp. 3d 392, 2016 U.S. Dist. LEXIS 64600, *16, 2016 WL 2899246, at *7 (D. Del. May 17, 2016) (noting that "[g]iven the evolving state of the law, the § 101 analysis should be, and is, a difficult exercise"); *Clarilogic, Inc. v. FormFree Holdings Corp.*, No. 15-41 (S.D. Cal. Apr. 27, 2016)(ECF No. 74)(declining to find that "the substantive weakness of Defendant's position was so objectively apparent as to render the case exceptional" under § 285 because "post-Alice, the landscape of patent ineligibility under 35 U.S.C. § 101 is unsettled and rapidly evolving"); *Credit Card Fraud Control Corp. v. Maxmind, Inc.*, No. 14-3262, 2016 U.S. Dist. LEXIS 83089, *6, 2016 WL 3355163 at *2 (N.D. Tex. Apr. 7, 2016) ("The substantive law of Section 101 patent-eligibility has evolved since Plaintiff initiated this lawsuit . . . [t]he mere fact that Plaintiff had a losing litigation position is not an automatic indicator that the case is exceptional under Section 285."); *EON Corp. IP Holdings, LLC v. FLO TV Inc.*, No. 10-812, 2014 U.S. Dist. LEXIS 71753, *5, 2014 WL 2196418, at *2 (D. Del. May 27, 2014) (denying attorney fees, noting patentee's position "turned on a complex and evolving area of [§ 101] law" and "the [court's] decision was not an easy one").

19

more realistic image rendition, rapid communication response time, and reduce server participation and communications costs." DE 32 at 16.

Del-Ton also argues that this case should be exceptional because "this Court had no difficulty finding that VOIT's claim was barred under *Alice*'s test." DE 49 at 15. However, even if "the Court had no difficulty granting [Del-Ton]'s motion to dismiss, the law on the scope of patentable subject matter – particularly on the meaning of abstractness – is uncertain enough that it would be difficult to find [VOIT's] approach to claim 1 of the '412 patent objectively unreasonable or unusually weak." *SungKyunKwan University v. LMI Technologies USA Inc.*, No. 3-16-cv-06966 (N.D. Cal., July 19, 2017) (citing *Enfish*), attached hereto as Exhibit Q.

Accordingly, "the asserted claims' invalidity under § 101 was not a predestined outcome before claim construction, and the strength of [VOIT]'s litigating position was not barren enough to make this case "exceptional.'" *GoDaddy.com*, 2016 U.S. Dist. LEXIS 118197, at *20 (citing *Site Update Sols. LLC v. Accor N.A., Inc.*, 2015 U.S. Dist. LEXIS 17603, 2015 WL 581175, at *5-8 (N.D. Cal. Feb. 11, 2015) (finding that patentee's "interpretation of [means-plus-function] law was flawed but not so objectively unreasonable or unusual as to make this case exceptional"); *Synopsys*, 2015 U.S. Dist. LEXIS 92769, 2015 WL 4365494, at *4 (finding that patentee's arguments involving § 101 were not "in any manner weak enough to make the case exceptional").

Nevertheless, Del-Ton also argues that this case should be deemed exceptional because, allegedly, "federal decisions following *Alice* have determined that the patents quite similar to VOIT's '412 patent do not satisfy the *Alice* test." DE 49 at 15. Even if accepted as true, "Defendant['s] arguments, when taken to their logical conclusion, would appear to require that any plaintiff asserting a patent 'similar to' patents found unpatentable under Section 101 in a separate case voluntarily dismiss with prejudice their infringement claims—or perhaps even forfeit their patents altogether—or face the risk of an attorneys' fee award pursuant to Section 285." *Credit Acceptance Corp. v. Westlake Servs., LLC*, No. 2:13-cv-01523 SJO, at 11 (C.D. Cal. Nov. 2, 2015), attached hereto as Exhibit O. As discussed

above, "[t]he contours of Section 101 have proven difficult to apply in practice both before and after *Alice*, and the Court [should] declin[e] the opportunity to read Section 285 so broadly as to impose such a harsh and unfeasible fee-shifting rule on patent owners." *Id.*

Further, the cases Del-Ton cites are not analogous. The first case Del-Ton relies on is *Inventor Holdings, LLC v. Bed Bath and Beyond*, 876 F.3d 1372 (Fed. Cir. 2017). However, in this case, "unlike in *Inventor Holdings*, where the court found the claims 'objectively ineligible' because they were nearly identical to the financial business method claims that the Supreme Court rejected in *Bilski* and *Alice*, there were no governing precedents to guide [VOIT] that found nearly identical claims invalid, and in its § 101 Opinion, this Court did not find the ['412 Patent's] claims identical to claims in any of the previously decided cases." *Certusview Techs., LLC v. S&N Locating Servs., LLC*, 2018 U.S. Dist. LEXIS 21960, at *16 (E.D. Va. Feb. 9, 2018) (internal quotations and citations omitted). Indeed, as discussed above in Section [CITE], none of the claims in the cases cited by Del-Ton in its Motion-at-issue and motion to dismiss were similar, much less 'nearly identical,' to the '412 Patent's claims. This distinction "significantly distinguish[es] *Inventor Holdings* and undercut[s] the strength of [Del-Ton]'s reliance on such case." *Id.* at *37.

The next case Del-Ton forces in its analysis is *My Health v. ALR Technologies, Inc.*, 2017 U.S. Dist. LEXIS 209273 (E.D. Tex. Dec. 19, 2017). Similar to *Inventor Holdings*, the court in *My Health* granted attorneys' fees under § 285 partly because nearly identical claims had been universally rejected by other courts. Specifically, the clams in *My Health* were "unquestionably 'abstract' within the meaning of Alice," since, unlike the '412 Patent's claims, the claims in *My Health* "did not require any hardware or software component and were broadly directed to 'a method of tracking a patient's compliance with treatment guidelines.'" *My Health* at *9-10. Unlike the '412 Patent's computer-improvement type claims whose eligibility under § 101 is still in flux, the "[p]atient treatment and monitoring methods such as those claimed [in *My Health*] […] have universally been found to be unpatentable under *Alice*." *Id.* at *13-14.

21

Significantly, the *My Health* court distinguished claims such as the '412 Patent's computer-type claims that have not universally been found unpatentable, stating: "cases invalidating claims directed to information collection and analysis, such as the '985 patent claims, stood in stark contrast to the handful of cases reaching the contrary conclusion under *Alice*, such as *Enfish, LLC v. Microsoft Corporation*, 822 F.3d 1327 (Fed. Cir. 2016), which found a 'specific improvement to the way computers operate' patent-eligible," and admitted that these "were of course gray areas." *Id.* Indeed, "even post-*Enfish*, the *Mayo/Alice* test provides limited practical guidance for distinguishing software and computer patents that are valid under § 101 from those that are not." *Synchronoss Techs., Inc. v. Dropbox Inc.*, 226 F. Supp. 3d 1000, 1007, 2016 U.S. Dist. LEXIS 177631, *13, 2016 WL 7406494 (N.D. Cal. 2016).

Accordingly, unlike *My Health*, where "[t]here was no credible argument that the '985 patent claims fell into one of the eligible exceptions defined in cases such as *Enfish*[,]" the '412 Patent's claims arguably fell within the realm of computer-centric exceptions defined in *Enfish*, and more recent Federal Circuit decisions. *My Health* at *14. Just as this distinction "significantly distinguished *Inventor Holdings*," it also "significantly distinguish[es] [*My Health*] and undercut[s] the strength of [Del-Ton]'s reliance on such case." *Certusview* at *37.

Lastly, as discussed above in Section [CITE], the '412 Patent's prosecution history, including the Supervisor's Memo, did not put VOIT on notice of any potential § 101 issues. The '412 Patent was never rejected under § 101, and the Supervisor's Memo did not bring up any § 101 concerns.

"In sum, this is not a case where [VOIT]'s 'infringement allegations were such that no reasonable litigant could reasonably expect success on the merits.'" *GoDaddy.com*, 2016 U.S. Dist. LEXIS 118197, at *20-21 (citing *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008)). "Accordingly [...] the 'substantive strength' of [VOIT]'s litigating position does not 'stand out' from other cases to merit a finding that this case is 'exceptional' under § 285." *Id.* at *21.

### ii. Plaintiff Litigated this Case in a Reasonable Manner

VOIT, founded by the '412 Patent's inventor who attempted to commercialize the invention, litigated this case in a reasonable manner. For the reasons discussed above, VOIT is not a "non-practicing entity," as alleged by Del-Ton. See Discussion *Supra* [CITE SECTION ABOVE]. Regardless of whether VOIT is a 'non-practicing entity,' "the fact of the matter is that [VOIT] owns the ['412 Patent] and therefore owns the right of enforcement." *GoDaddy.com*, 2016 U.S. Dist. LEXIS 118197 at *25. Accordingly, VOIT sought to enforce its presumptively valid patent rights against what it determined to be direct infringers who could afford to pay VOIT's reasonable royalty, as discussed above. Moreover, as explained above, VOIT "achieved favorable results in other litigation over the '[412] Patent [… and] [w]hile Defendants point out valid distinctions between those cases and this one, this fact makes it difficult […] to conclude that it was "extraordinary" for [VOIT] to continue to pursue its infringement allegations[.]" *EON Corp. IP Holdings LLC v. Cisco Sys. Inc.*, No. 12-cv-01011-JST, 2014 WL 3726170, at *6 (N.D. Cal. July 25, 2014) (denying attorneys' fees).

Del-Ton's arguments attacking VOIT's conduct rely heavily on the fact that VOIT sued 37 defendants, however "[e]nforcement of a patent against one company or a thousand companies is, legally speaking, the same." *GoDaddy.com*, 2016 U.S. Dist. LEXIS 118197 at *25 (citing *Rates Tech., Inc. v. Broadvox Holding Co.*, LLC, 56 F. Supp. 3d 515, 533 (S.D.N.Y. 2014) ("If [a patent owner]'s claims had merit, its status as a hyper-litigious non-practicing entity should not prevent it from bringing suit.").

Indeed, just as a losing argument alone does not support an "exceptional case" finding under section 285, aggressive litigation strategies, without more, typically do not suffice to justify an attorney fees award on grounds of "unreasonable conduct." See, e.g., *E. Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*, No. 12-cv-517-LM, 2015 WL 4603463, at *10 (D.N.H. July 30, 2015) (denying attorney fees, noting that damages theory "attempting to recover more than a case may ultimately be worth is a common litigation tactic, not something that makes a case stand out"); *Gametek* at *3 (finding patentee's "aggressive litigation strategy" did not justify finding of exceptionality under § 285). Accordingly, "the reasonableness of [VOIT']s conduct does not make this case 'stand out' from other cases when

considered in light of the totality of the circumstances." *GoDaddy.com*, 2016 U.S. Dist. LEXIS 118197 at *25.

Further, even if "slight weight is given to the 'deterrence' factor based on [VOIT]'s serial enforcement campaign before this litigation began, there is nothing in the 'substantive strength' of [VOIT]'s litigating position or in its litigation conduct that causes this case to 'stand out' when considered in light of the totality of the circumstances. *Id.* at *27.

Del-Ton also alleges that "VOIT targeted small businesses, including Del-Ton […] solely to extract nuisance settlements," implying that such entities would not be able to afford testing the merits of VOIT's case. DE 49 at 8 and 16. Nothing could be further from the truth. As discussed above, VOIT only sued infringers it believed could afford to pay a reasonable royalty, and in so doing, sued entities with far superior resources than VOIT itself. For example, in *VOIT Techs., LLC v. It's Only Natural, LLC*, the defendant was represented by the prestigious and expensive law firm of Klipatrick, Townsend & Stockton LLP. *See* Entry of Appearance of Matthew C. Holohan [DE 9], *VOIT Techs., LLC v. It's Only Natural, LLC*, 1:17-cv-01621-NYW (D. Colo. Aug. 14, 2017), attached hereto as Exhibit L. In this case Del-Ton, which VOIT estimated had an annual revenue in the millions of dollars, is represented by a firm with nearly 100 attorneys. *See* Ward and Smith's Attorney List, *available at* https://www.wardandsmith.com/our-team?attorney=all, attached hereto as Exhibit M. Del-Ton's counsel even admits that Del-Ton is a "small-medium size business." Hearing 5:11. Thus, VOIT clearly did not pursue 'small businesses' incapable of defending themselves and testing the merits of it case.

"Contrary to [Del-Ton]'s characterizations, Plaintiff [VOIT] did test the merits of this case and, as a consequence, some of the claims of the '[412] Patent have now been found invalid*." Prod. Ass'n Techs. v. Clique Media Grp.*, No. CV 17-5463-GW(PJWx), 2017 U.S. Dist. LEXIS 217133, at *13 (C.D. Cal. Nov. 30, 2017) (denying attorneys' fees under § 285 even though plaintiff filed eight lawsuits on the same day against multiple defendants, and lost on a § 101 challenge).

Del-Ton also alleges that VOIT only sought nuisance value settlements, but just as in *Clique Media*, Del-Ton did not submit "evidence of the value of Plaintiff's settlements in its other [cases] to show that all – or even just some – of those cases concluded in nuisance value settlements." Indeed, Del-Ton's counsel even admitted at the hearing on its motion to dismiss he "[had] no idea" as to the value of VOIT's average settlements. Hearing 16:13.

In reality, as discussed above, and as set forth in the consent judgment in *VOIT v. Decorative Iron*, *see* Exhibit J, VOIT only sought fair settlements based on what it believed to be a reasonable royalty taking into account the quantum of damages in each case. In this case, VOIT sought only a settlement based on a reasonable royalty estimate from Del-Ton, *see* Exhibit N, which Defendant could afford to pay. Indeed, Del-Ton spent over ***seven times*** as much on attorneys' fees as VOIT's initial settlement offer.

Del-Ton also incorrectly alleges that VOIT filed frivolous motions and attempted to delay this case in a 'bad-faith' attempt to force settlement. (DE 49 at 19). However, as explained above, all of VOIT's motions were granted for good cause, denied as moot, or simply denied with any explanation. Significantly, this Court did not state that any of VOIT's motions were frivolous or lacked merit. Further, to the extent that VOIT sought settlement, it did so only to prevent ***both parties*** from expending unnecessary attorneys' fees and litigation costs – a policy for which there is a strong judicial preference. *See Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652 (4th Cir. 1988).

In reality, it is Del-Ton whose conduct was unreasonable – a factor weighing against a finding of exceptionality. See *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) (stating that, under *Octane*, consideration of litigation conduct "includ[es] the conduct of the movant"); *NXP B.V. v. BlackBerry, Ltd.*, 58 F. Supp. 3d 1313, 1325 (M.D. Fla. 2014) (denying attorney fees, noting that "[a]ny delay, expense or inconvenience that resulted [wa]s a shared responsibility of the parties"). As explained above, Del-Ton's motion for bond was frivolous and duplicative because it relied on the same arguments set forth in its motion to dismiss, and presented the same non-infringement

arguments VOIT defeated in other cases. Further, Del-Ton never conferred with VOIT before preparing its motion for bond and to dismiss even though it knew a settlement offer from VOIT was forthcoming. And, when it did receive VOIT's settlement offer, Del-Ton's counsel misrepresented to VOIT's counsel the amount of work it had performed on its papers in order to thwart settlement and bill for unnecessary attorneys' fees. Accordingly, this factor weighs in VOIT's favor.

The cases Del-Ton cites in its *Octane Fitness* prong two analysis are also not analogous. In addition to the reasons explained above, *My Health* is not analogous for several reasons. Unlike in this case, which had three merits determinations within three years (in the *Drucker Labs*, *Bluegate*, and present cases), the *My Health*'s plaintiff's numerous cases continued for five years without a single determination on the merits.[10] *My Health* at *18. Further, unlike in this case, the plaintiff and its counsel *My Health* engaged in "troubling" behavior, including directly contacting defendants it knew were represented by counsel, and making various misrepresentations of fact to the court that were not true. *Id.* at *19-20.

Del-Ton also cites *Lumen View Technology, LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329 (S.D.N.Y. 2014) (DE 49 at 17), wherein the court granted awarded attorneys' fees because the plaintiff "never sought to enjoin [the defendant] from the allegedly infringing conduct." *Id.* at *3. However, as discussed above, VOIT could not have sought an injunction against Del-Ton in this case because the '412 Patent had already expired. This distinction undermines Del-Ton's reliance on *Lumen View*.

Del-Ton forces another case in its analysis, *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011). However, in that case the court affirmed the lower court's award of attorneys' fees primarily because the non-prevailing party and its counsel "destroyed relevant documents" it was required to preserve, "intentionally did not implement a document retention plan," and "failed to engage the claim

---

[10] This distinction also appears in another cased cited by Del-Ton, *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344 (Fed. Cir. 2015), wherein the Federal Circuit held that "a pattern of litigation abuses characterized by the repeated filing of patent infringement actions ***for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims***, is relevant to a district court's exceptional case determination under § 285." *Id.*, at 1350 (emphasis added).

construction process in good faith," which were only some "of many instances of misconduct detailed by the district court" that ultimately resulted in Rule 11 sanctions against the non-prevailing party. *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1325. *Id*. at 1324-30.  No such facts are present in this case, and VOIT has never had Rule 11 sanctions imposed against it.

Del-Ton also cites *Rothschild Connected Devices Innovations, LLC v. Guardian Protection Services, Inc.*, 858 F.3d 1383, 1390 (Fed. Cir. 2017).  However, unlike here, the non-prevailing party in *Rothschild* had maintained "willful ignorance" of prior art cited by the prevailing party, even in opposing fees – a fact which the district court failed to consider, and resulted in reversal and remand of the court's denial of fees. *Id*. at 1388.  Here, prior art was not at-issue in Del-Ton's motion to dismiss, and VOIT did not maintain willful ignorance of any facts.

Del-Ton also relies on *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 916 (Fed. Cir. 2012). However, in that case, the plaintiff filed a baseless suit in bad faith and pursued it with no evidence of infringement.  Specifically, the court found that based on plaintiff's knowledge, the plaintiff's position in claim construction had no evidentiary support and that its decision to continue the litigation after claim construction was in made bad faith.  *Id*. at 922.  Again, no such facts are present in this case.

For the foregoing reasons, Del-Ton has "failed to establish that this case is one of those "rare cases" that should be deemed "exceptional." *GoDaddy.com*, 2016 U.S. Dist. LEXIS 118197, at *26-27.

### C. Del-Ton's Requested Attorneys' Fees are Excessive

A district court has discretion to decide the amount of attorneys' fees available under Section 285. *Lam, Inc. v. Johns-Manville Corp*., 718 F.2d 1056, 1068 (Fed. Cir. 1983). "The methodology of assessing a reasonable award under 35 U.S.C. § 285 is within the discretion of the district court." *Mathis v. Spears*, 857 F.2d 749, 754 (Fec. Cir. 1988) (citing *Lam*, 718 F.2d at 1068). "In determining the reasonableness of the award, there must be some evidence to support the reasonableness of, inter alia, the billing rate charged and the number of hours expended." Lam, 782 F.2d at 1068 (citations omitted).

"Determining the number of hours reasonably expended on the litigation often requires more finessing." *Credit Acceptance*, at 5, Exhibit O. While " case law explains the application of 35 U.S.C. § 285 as involving a two-step analysis of first determining whether the case is exceptional and then determining the amount of the award […] the two component steps of the analysis are not independent." *Special Devices, Inc. v. OEA*, Inc., 269 F.3d 1340, 1344 (Fed. Cir. 2001) (internal citations omitted). "Rather, the amount of the attorney fees depends on the extent to which the case is exceptional. In other words, the exceptionality determination highly influences the award setting." *Id.* Thus, "the amount of fees awarded to the 'prevailing party' should bear some relation to the extent to which the party actually prevailed." *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1554 (Fed. Cir. 1989).

Fed.R.Civ.P. 54(d)(2)(C) states that a "court may decide issues of liability for fees before receiving submissions on the value of services." Fed.R.Civ.P. 54(d)(2)(C). Indeed, "[t]he court is explicitly authorized to make a determination of the liability for fees before receiving submissions by the parties bearing on the amount of an award. This option may be appropriate in actions in which the liability issue is doubtful and the evaluation issues are numerous and complex," such as this case. Fed.R.Civ.P. 54, advisory committee's note.

As explained above, Del-Ton's attorneys' fees include a significant amount of unnecessary work related to the preparation of its frivolous motion for bond. Further, Del-Ton billed for duplicative work. Also, attorney Joseph Schouten, a shareholder of Del-Ton's counsel's firm, billed for 252.05 hours of work at a rate of $410-$415 per hour (totaling $103,488.75) – costing ***nearly double*** the value of the 189 hours billed by the firm's associated at rates between $240-$330/hr (totaling $54,825.00). (DE 49-6 at 42). Del-Ton's counsel should have delegated the bulk of the work to associate-level attorneys in order to save its client money.

### D. Del-Ton's Request Is Non-Compliant With The Local Civil Rules, And Del-Ton Seeks Payment Of Non-Taxable Expenses

Del-Ton's request for costs should be denied because Del-Ton failed to file a bill of costs on AO Form 133, as required by Local Civil Rule 54.1(a)(1).

Further, Del-Ton's request for expenses fails because it seeks "[i]tems not normally taxed," including "subsistence, and mileage for individual parties[.]" Local Civil Rule 54.1(c). Specifically, Del-Ton seeks $545.40 in "subsistence, and mileage for individual parties," namely travel, motel and meal expenses incurred by Del-Ton as an individual party. (*See* DE 49-6 at 39). Del-Ton also seeks $171.25 for a "copy of the Patent File History" (DE 49-6 at 27), which VOIT was required to produce to Del-Ton in its initial disclosures per Local Civil Rule 303.2, and which VOIT would have happily provided to Del-Ton any time prior thereto upon request. Thus, a second copy of the Patent's File History is analogous to the "multiple copies of depositions" expense, which is deemed non-taxable by Local Civil Rule 54.1(c).

## IV. CONCLUSION

Because this case is not exceptional under § 285, and because Del-Ton's request for expenses fails under the Local Civil Rules, VOIT respectfully requests that this Court deny Del-Ton's Motion For Attorneys' Fees in its entirety, and grant VOIT such other relief as the Court deems appropriate.

Dated: March 8, 2018.

Respectfully submitted,

*/s/ David F. Tamaroff*
David F. Tamaroff, Esq.
LIPSCOMB & PARTNERS, PLLC
25 SE 2nd Avenue, 8th Floor
Miami, Florida 33131
Tel: (786) 431-2326
Fax: (786) 431-2229
dt@lipscombpartners.com
Florida Bar No. 92084

And

Frank W. Leak, Jr. Esq.
LEAK & JAMISON, PLLC
P.O. Box 21026
Winston-Salem, NC 27120
Tel: (336) 245-1655
Fax: (336) 245-1655
frank.leak@thirtysixthirtylaw.com
North Carolina Bar No. 27937
Local Civil Rule 83.1 Counsel for Plaintiff
*Attorneys for Plaintiff VOIT Technologies, LLC*


## CERTIFICATE OF SERVICE

I hereby certify that, on March 8, 2018, I electronically filed the foregoing document with the

Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Joseph A. Schouten
jas@wardandsmith.com

Caroline B. McLean
cbmclean@wardandsmith.com

*/s/ David F. Tamaroff*
David F. Tamaroff, Esq.

30